IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MOUNT SPELMAN & FINGERMAN, P.C., <br><br> Plaintiff, <br><br> v. <br><br> GEOTAG, INC., JOHN W. VEENSTRA AND ELIZABETH A. MORGAN, ET AL. <br><br> Defendants. | § § § § § § § § § § § § § § Civil Action No. 2:14-cv-00013 <br><br> **LEAD CASE** |
| GEOTAG, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOUNT SPELMAN & FINGERMAN, P.C., <br><br> Defendant. | § § § § § § § § § § § § § § § § Civil Action No. 2:14-cv-00558 <br><br> **CONSOLIDATED CASE** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is GeoTag, Inc., John W. Veenstra and Elizabeth A. Morgan's (collectively "GeoTag") Motion for a Preliminary Injunction (Dkt. No. 5 in case 2:14-cv-00558) against Mount Spelman & Fingerman, P.C., ("MSF"). In the lead case, MSF filed a Second Amended Complaint alleging ten counts of misconduct related to a fee agreement with GeoTag. GeoTag filed a Motion to Dismiss (Dkt. No. 45 in the lead case 2:14-cv-00013) relating to Plaintiff's Second Amended Complaint. In addition, GeoTag filed (as part of its case) this Motion for a Preliminary Injunction. On September 5, 2014, this Court entered a Consolidation

1

Order (Dkt. No. 14 in 2:14-cv-00558) consolidating all pretrial issues.  In this Opinion, the Court will address the matter of GeoTag's Motion for a Preliminary Injunction and the issue of MSF's claims regarding an enforceable lien to secure collection of their disputed legal fees.  Both MSF and GeoTag have made arguments in both cases that cover the issues addressed here.  After careful consideration of the counsel's arguments, the parties' briefing, the applicable ethical rules, and the Fee Agreement in issue, the Court resolves the lien dispute as set forth below and in light of the same finds that GeoTag's Motion for a Preliminary Injunction should be DENIED.

### I.     Background

At the heart of this dispute is a Fee Agreement (the "agreement") between a law firm, MSF, and its former client, GeoTag, Inc.  The agreement—a contract—was entered into on or around September 21, 2012.  The agreement was signed by Kevin Pasquinelli on behalf of MSF and by John Veenstra, as CEO of GeoTag.

The Fee Agreement was drafted by MSF as the attorney for GeoTag and sought to outline the scope of the representation that MSF would afford GeoTag.  That representation centered on enforcement of GeoTag's patent (U.S. Patent No. 5,930,474, hereinafter the '474 Patent), which deals primarily with store locator technology used on websites.

However, what is contemplated by the fee agreement is not a typical contingency fee for a single patent dispute.  GeoTag, through various attorneys including MSF, has filed multiple suits against over 400 defendants at various locations within the United States seeking to enforce its patent rights.  GeoTag sued over 350 such defendants in Texas federal courts alone.  As these cases proceeded, a litany of settlements and dismissals resulted.  On November 8, 2013, GeoTag fired MSF as its counsel.

MSF now contends that it is owed substantial sums as attorney's fees under the Fee Agreement. It further contends that the agreement gives MSF a contractual lien over all amounts recovered by GeoTag as a result of enforcing the '474 patent in cases filed in Texas as well as cases filed in Delaware and other federal districts around the country. To enforce its asserted lien, MSF has sent letters to entities sued by GeoTag stating that MSF has a lien covering all settlement proceeds and directing those settling entities to pay the settlement amounts into an escrow account that cannot be touched by GeoTag until the dispute is resolved by this Court.

As a result, GeoTag filed its Motion seeking a Preliminary Injunction to prevent MSF from making such demands on the defendants sued by GeoTag. GeoTag's primary contention is that the lien is unethical under the Texas Disciplinary Rules of Professional Conduct. GeoTag argues in the alternative that the lien should only cover "existing settlements" at the time of MSF's discharge—per the language of the contract—which would prevent MSF from asserting the "global, cross-collateralized" lien that it now claims.

## II. Ethics of an Attorney's Contractual Charging Lien

GeoTag's primary argument in favor of finding MSF's asserted lien unethical relies on Rule 1.08(h), which states "a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may (1) acquire a lien granted by law to secure the lawyer's fee or expenses; and (2) contract in a civil case with a client for a contingent fee that is permissible under Rule 1.04." Tex. Disciplinary R. Prof'l Conduct 1.08(h). GeoTag also relies heavily on Texas Ethics Opinion 610, which puts forth the argument that the contingent fee and the corresponding lien are two separate "proprietary interests" in the litigation. Op. Tex. Ethics Comm'n No. 610 at 1 (2011). That ethics opinion argues that the contingent-fee aspect of the contract falls under exception (2) to

3

Rule 1.08(h), but the lien itself, being a separate interest, does not fall under exception (2) to the rule. *Id.* To be ethical, the lien would have to qualify under exception (1) as "a lien granted by law" (in the words of Rule 1.08(h)), which the ethics opinion concludes it is not. *Id.*

However, rather than accepting a committee's advisory opinion, this Court is charged with looking "to Texas law to determine whether an attorney holds a lien for fees against a judgment or settlement amount." *United States v. Betancourt*, CRIM. B-03-090-S1, 2005 WL 3348908 (S.D. Tex. Dec. 8, 2005) *aff'd*, 257 F. App'x 785 (5th Cir. 2007). Ethics opinions do not have the force of law but are advisory only. Tex. Gov. Code § 81.092(c) ("Committee opinions are not binding on the [Texas] Supreme Court.").

As our sister Courts in this State have recognized, "[u]nder Texas law, a contract may establish an attorney's lien for money received in judgment or settlement of a matter." *Bentacourt*, at *3 (citing to *Thomson v. Findlater Hardware Co.*, 205 S.W. 831, 832 (Tex. 1918)); *see also Strickland v. Sellers*, 78 F. Supp. 274, 278 (N.D. Tex. 1948) ("[I]n this State, *without some special contract*, a lawyer, between himself and client . . . has only the common law [retaining] lien." (emphasis added)). So while there is no common law charging lien granted to an attorney as a matter of right, the Texas courts have recognized with approval situations where attorneys have acquired a charging lien through an express contract, without running afoul of any ethical issue. *See, e.g.*, *Dow Chemical Co. v. Benton*, 357 S.W.2d 565, 56667 (Tex. 1962) (discussing a fee agreement where the plaintiff assigned a portion of the interest in the settlement or judgment to the lawyer as security for the lawyer's fees, and stating "there is no question of the personal ethics of the attorneys here in question"); *Honeycutt v. Billingsley*, 992 S.W.2d 570, 573 (Tex. App.—Houston [1ˢᵗ Dist.] 1999, pet. denied) (assigning, granting, selling, and conveying a 25%-40% interest of the plaintiff's suit to the attorney).

In addition, this Court notes that the reasoning of Ethics Opinion 610 is inapposite to the reasoning of another ethics opinion that applied the predecessor to Rule 1.08(h), which contained the same substantive language, to a similar situation. *See* Op. Tex. Ethics Comm'n No. 499 (1987) (quoting the former rule in full: "Disciplinary Rule [DR] 5-103 prohibits a lawyer from acquiring 'a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client.' However, DR 5-103 provides that a lawyer may 'acquire a lien granted by law to secure his fee or expenses: or may contract with a client for a reasonable contingent fee in a civil case.'") In Ethics Opinion 499, an attorney represented a client in a property dispute. *Id.* The question was "[w]hen representing a client in a property dispute, may an attorney acquire an undivided fee simple interest in the property as security for [i.e., as a lien for] the payment of his fee?" *Id.* Citing the predecessor to Rule 1.08(h), the Committee concluded that as long as the interest was taken in good faith and with the client's consent, it was ethical. *Id.* In that opinion, the Committee stated "[t]he attorney's acquisition of an interest in the property is *equivalent* to contracting for a contingent fee which is allowed by DR 5-103(A)(2)," the predecessor to the second exception in Rule 1.08(h). *Id.* (emphasis added). It is hard—if not impossible—to reconcile the reasoning of these two ethics opinions. However, given their non-binding nature, such a reconciliation is not necessary here.

Considering the weight of the authority and noting that neither the Texas Supreme Court nor any other Texas state court has held these types of contracts unethical, this Court finds and holds that the lien asserted here is not barred as a matter of legal ethics.

### III. The Specific Contract in Question

Having decided that contingent fee agreements containing an express contractual lien are not unethical per se, this Court next turns to the specific contract in question. The crux of the

dispute centers on whether MSF holds a lien over all of GeoTag's cases which were pending before November 8, 2013, including cases not settled until after MSF was terminated, or whether MSF holds a lien over only those cases where settlement was consummated before MSF was terminated on November 8, 2013. This issue is decided on general contract principles viewed through the lens of the attorney-client relationship. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) ("The attorney's special responsibility to maintain the highest standards of conduct and fair dealing establishes a professional benchmark that informs much of our analysis in this [contingency fee contract] case.").

### a. Applicable Law

"When interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560 (Tex. 2006) (internal quotation marks omitted). As a result, when contracting for a termination clause and lien agreement with the client, the lawyer bears the burden of explicitly stating any terms that would diverge from the expectations of a reasonable client who places the attorney in a position of trust. *Id.* at 562; *Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 95 (Tex. 2001); *see also* Restatement (Third) of The Law Governing Lawyers § 18 cmt. h ("The lawyer thus bears the burden of ensuring that the contract states any terms diverging from a reasonable client's expectations.").

With this guidance in mind, the Court looks to this particular contract to answer the question at the heart of this dispute. "In construing contracts, we must ascertain and give effect to the parties' intentions as expressed in the document." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). "Whether a contract is ambiguous is a question of law

6

for the court to decide." *See id.* When a contract term is ambiguous, "courts will construe the contract to favor one party in light of the relationship of the parties or public policy." *Id.* at 866. When that relationship is between an attorney and client, the Texas Supreme Court has held that "[t]he special relationship between a lawyer and client leads [the court] to conclude that an ambiguous contract between them should generally be construed against the lawyer-drafter." *Id*. As to the provisions in this contract which would establish MSF's charging lien, the Court concludes this contract is ambiguous.

  **b. Discussion**

  By its very nature, this contract is based on the contingency of recovery by the plaintiff. In fact, MSF must have recognized this fact since they wrote it directly into the contract: "Fees are fully earned as of the *date of execution of the settlement agreement* between plaintiff and defendant." Dkt. No. 8-1, 9 (emphasis added). When drafting the lien provision, MSF also stated that "[o]ur lien will be for any amounts owing to us." *Id.* at 11. The language of these two clauses, although in different parts of the contract, reveals the parties' general intent. MSF acquires a lien over amounts "owing," and which are "earned as of the date of execution of the settlement agreement." *Id.* at 9, 11. This leads the Court to conclude that the parties intended the lien to cover only the money received in settlement of disputes that were consummated while MSF was employed by GeoTag.

  To further support the notion that this must have been the parties' intent, the Court looks to the part of the contract where "Termination of the Relationship" is discussed. *Id.* at 11. MSF, when drafting the contract, contemplated the precise parting of ways that has now occurred. This provision states that "in the event of discharge" MSF must be paid "the greater of (1) the contingency fees owed or (2) reasonable attorneys' fees and costs." *Id.* As discussed, the

7

contingency fee is "owed" when the contingency is met. This reading, again, is supported by MSF's own drafting: "Contingency fees owed mean the percentage calculated . . . of any existing settlement . . . ." *Id.* In deciding whether "existing settlement" is a reference to all pending disputes and even future disputes, as MSF contends, or only disputes settled while MSF was still employed by GeoTag, as GeoTag contends, the Court must construe this ambiguous term in favor of the client. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 866 (Tex. 2000). Accordingly, using general contract construction principles, the Court concludes that MSF has a lien covering only those disputes where resolution (by executed settlement agreement, final judgment or dismissal with prejudice) was consummated before November 8, 2013.

Before proceeding further, the Court believes it is prudent to clearly define and clarify—so there is no misinterpretation by the parties—what the Court means by a "consummated" resolution. In this context, the Court means and finds that MSF holds a lien over the contractually specified contingent fee percentage of settlement funds, which as of November 8, 2013, were subject to either:

(1) a written settlement agreement actually executed by GeoTag and the particular defendant,

(2) a final judgment that was signed and entered by the Court on or before such date, or

(3) a Joint or Unopposed Motion to Dismiss where an Order of Dismissal with Prejudice was granted by the Court and filed in that case before such termination date.

The Court acknowledges that MSF believes it is "owed" reasonable attorneys' fees and costs (in the alternative to a contingency fee) under the termination provision of the contract for

8

disputes that were not consummated and argues a lien attaches to money received from those disputes as well. The Court disagrees. An enforceable debt may exist there, but it is not secured by a lien.

At issue in this case is the assertion of a broad security interest associated with the contemplated enforcement of a patent through many separate lawsuits—not a specific, single and particular lawsuit against a specific defendant. The Court notes that as of today various law firms for GeoTag have filed suit against more than 350 defendants in this Court to enforce GeoTag's patent rights regarding the '474 patent as applied to store locator technology. This type of broad, sweeping security interest is not what Texas contemplated when it set forth the rules on liens and contingent fees. *See Mendell & Wright v. Thomas*, 441 S.W.2d 841, 844-45 (noting, contrary to this situation, that the security in the contingency fee contract was not void because the contract "specifically identifie[d] the claim" and the claim was "identified and understood by the parties"). The contract in question refers, in the broadest terms possible, to "matters" and a patent number—while not referring to any specific dispute. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 563 (Tex. 2006). "Lawyers almost always possess the more sophisticated understanding of fee arrangements. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients." *Id.* (internal quotation marks removed). Here the risk of drafting a contingency fee contract that exceeded a reasonable client's expectations fell on MSF. As a result, the Court concludes that MSF has a lien on their contractually provided portion of recovered proceeds only in cases where resolution was consummated before November 8, 2013—the date of MSF's discharge—and MSF holds an unsecured breach of

contract action—to the extent it can prove damages—against GeoTag for any dispute that was resolved and consummated after such date.

Further, the Court finds that the lien held by MSF is only enforceable on a case-by-case basis and not collectively; that is to say, MSF may only properly seek to enforce its lien in each individual case where resolution of the case was consummated before November 8, 2013, and there only to the extent of the specified contingent fee earned in that particular case. MSF may not assert its lien for fees elsewhere and not related to the individual case at issue. For example, if MSF claims fees due across the spectrum of cases, collectively, totaling $10,000,000 stemming from 100 separate cases, and in one of those cases MSF would, per its contract, be entitled to $100,000 on a $500,000 total recovery, then MSF may assert and enforce its lien in that case only to the extent of $100,000, and it may not assert a collective lien of $10,000,000 against the full $500,000 recovery in that case. This too stems from MSF's assumption of the risk as the lawyer-drafter of what must be viewed to be an excessively broad and ambiguous lien provision.

Similarly, in cases where final resolution was consummated before November 8, 2013, MSF must accept GeoTag's allocation of "costs" to these specific, individual cases when calculating the amount that its lien covers. This conclusion follows from the same principle discussed above: if MSF drafts a contract that leaves unclear the proportion of accrued costs allocated to each individual case, then MSF bears the risk as the lawyer-drafter that those costs are allocated in a manner contrary to the subjective desires of the lawyer. The Court must construe the contract from the perspective of a reasonable client.

Finally, the Court finds that MSF does not hold a lien over the funds obtained from the Delaware litigation or the Yellowpages.com litigation. With respect to both of these matters, the

contract is ambiguous regarding MSF's role and the manner of calculating how much money, if any, MSF is entitled to recover from these matters. The Court reaches this conclusion based on the language of the contract while resolving any ambiguities against the lawyer-drafter. To the extent MSF is owed any money from these matters, MSF must prove its damages as part of an unsecured breach of contract action, and it is not secured by a lien stemming from the fee agreement.

While GeoTag claims that such ambiguities and vagueness combine to forfeit MSF's right to assert its lien altogether, the Court does not agree. While the Court must resolve disputes against the lawyer-drafter MSF, as it has herein, MSF holds an enforceable lien to the extent, but only to the extent, set forth in this Opinion. MSF's attempt to assert a massive collective lien across hundreds of cases and all the proceeds generated therefrom would exceed any reasonable client's expectations and must therefore be prohibited under these circumstances. Only a fee agreement with much greater clarity and precise language (not open to varying interpretations) would support a lien of the sweeping character asserted by MSF. The present language of the disputed fee agreement falls well short of that standard, i.e., what would be necessary to put a reasonable client on notice of the true nature and effect of such a far-reaching provision.

### IV. The Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65, this Court is vested with the power to issue preliminary injunctions. To obtain a preliminary injunction, an applicant, like GeoTag, must prove: (i) a substantial likelihood that it will prevail on the merits; (ii) a substantial threat that it will suffer irreparable harm; (iii) that the threatened harm outweighs any harm that will result if the injunction is granted; and (iv) that granting the injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

GeoTag alleges that it has and will continue to suffer irreparable harm as a result of MSF's actions regarding any settlement that occurred after November 8, 2013. However this harm, if any, is now substantially mitigated by this Court's ruling. Further, GeoTag's dispute with MSF involves money damages only, and contractual disputes seeking solely money damages rarely, if ever, support the issuance of injunctive relief. As a result, this Court concludes that a preliminary injunction is not warranted or otherwise proper.

### V. Conclusion

For the reasons set forth above, it is ORDERED AND DECREED that MSF has an ethically enforceable charging lien in the cases subject to the disputed fee agreement but only to the extent as expressly provided for herein. In all other circumstances and as regards to all other sums recovered or recoverable by GeoTag pursuant to the disputed fee agreement, MSF has, subject to adequate proof and the meeting of its burden, an unsecured claim for money damages but only as may be established in a subsequent trial pursuant to its alleged breach of contract claims. In light of these holdings, a preliminary injunction is not warranted or supported. GeoTag's Motion for a Preliminary Injunction is DENIED.

**So ORDERED and SIGNED this 2nd day of October, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE